IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 16-cv-01731-LTB

KAREN MARY BAILEY

      Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

      Defendant.

_____

MEMORANDUM OPINION AND ORDER
_____

Babcock, J.

Plaintiff Karen Bailey appeals the final decision of the Acting Commissioner of Social Security ("SSA") denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. I have considered the parties' briefs (ECF Nos. 13–15) and the administrative record (ECF No. 10) ("AR"). Oral argument would not materially assist me in determining this appeal.

Ms. Bailey argues the Administrative Law Judge ("ALJ") improperly determined her work as an oil painter constituted "past relevant work" under the regulations and therefore wrongly determined she was not disabled. I agree that the ALJ erred when he determined Ms. Bailey had worked long enough as a painter for it to qualify as past relevant work. Accordingly, I **REVERSE** SSA's decision and **REMAND** for proceedings consistent with this opinion.

## I. Background

Ms. Bailey filed her claim for disability and disability insurance benefits with SSA in September 2013, alleging disability beginning January 2010. AR 150–156. Ms. Bailey later amended the onset date to June 1, 2012. AR 54. After SSA initially denied her claim, AR 76–87, Ms. Bailey requested a hearing, AR 94–95. The hearing took place on August 26, 2014, before an ALJ. AR 51–75. On December 5, 2014, the ALJ denied Ms. Bailey's claim, concluding that Ms. Bailey was not disabled within the meaning of the Social Security Act. AR 35–50. Ms. Bailey asked SSA's Appeals Council to review the ALJ's decision. AR 32–33. On May 4, 2016, the Appeals Council denied review, AR 17–19, making the ALJ's decision the final decision of SSA, *see Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On July 7, 2016, Ms. Bailey timely filed this appeal. (ECF No. 1.) I have jurisdiction pursuant to 42 U.S.C. § 405(g).

## II. Legal Standards

### A. SSA's Five–Step Process for Determining Whether a Claimant Is "Disabled"

A claimant is "disabled" under Title II of the Social Security Act if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). SSA has established a five–step sequential evaluation process for determining whether a claimant is disabled and thus entitled to benefits. 20 C.F.R.

§ 404.1520.

At step one, SSA asks whether the claimant is presently engaged in "substantial gainful activity." If she is, benefits are denied and the inquiry stops. § 404.1520(b). At step two, SSA asks whether the claimant has a "severe impairment"—that is, an impairment or combination of impairments that "significantly limits [her] physical or mental ability to do basic work activities." § 404.1520(c). If she does not, benefits are denied and the inquiry stops. If she does, SSA moves on to step three, where it determines whether the claimant's impairment(s) "meet or equal" one of the "listed impairments"—impairments so severe that SSA has determined that a claimant who has them is conclusively disabled without regard to the claimant's age, education, or work experience. § 404.1520(d). If not, SSA goes to step four. At step four, SSA determines the claimant's residual functional capacity ("RFC")—that is, what she is still able to do despite her impairments, and asks whether the claimant can do any of her "past relevant work" given that RFC. § 404.1520(e). If not, SSA goes to the fifth and final step, where it has the burden of showing that the claimant's RFC allows her to do other work in the national economy in view of her age, education, and work experience. § 404.1520(g). At this step, SSA's "grid rules" may mandate a finding of disabled or not disabled without further analysis based on the claimant's age, education, and work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2. In contrast with step five, the claimant has "the burden of establishing a prima facie case of disability at steps one through four." *Doyal*, 331 F.3d at 760.

B.  **Standard for Reviewing SSA's Decision**

My review is limited to determining whether SSA applied the correct legal standards and whether its decision is supported by substantial evidence in the record. *Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000). With regard to the law, reversal may be appropriate when SSA either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). With regard to the evidence, I must "determine whether the findings of fact . . . are based upon substantial evidence, and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). I may not reweigh the evidence or substitute my judgment for that of the ALJ. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

### III.  The ALJ's Decision

The ALJ followed the five–step analysis outlined above. At step one, the ALJ

found that Ms. Bailey had not engaged in substantial gainful activity since her alleged onset date and met the insured requirements of the Social Security Act through June 30, 2013. AR 40. At step two, the ALJ found Ms. Bailey had one severe impairment: lumbar degenerative disc disease. AR 41. At step three, the ALJ concluded that during the relevant period, Ms. Bailey's impairments did not meet or equal any of the "listed impairments" that mandate a conclusive finding of disability under the social security regulations. AR 41–42. At step four, the ALJ found that Ms. Bailey had the following RFC:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can never climb ladders, ropes, or scaffolds. She can occasionally stoop and can frequently kneel, crouch, or crawl.

AR 42. The ALJ determined that Ms. Bailey had past relevant work as an oil painter and could return to that work. AR 45. The ALJ accordingly concluded that Ms. Bailey was not disabled under the Social Security Act during the relevant period. *Id.*

## IV. Analysis

Ms. Bailey does not dispute than she can perform light work despite her lumbar spine impairment. Instead, this appeal concerns one narrow issue: whether the ALJ properly determined Ms. Bailey's past work as an oil painter qualified as "past relevant work" under the regulations. According to Ms. Bailey, it does not. Had the ALJ not made this mistake, Ms. Bailey argues, he would have found her disabled under the "grid rules" given her age, experience, and education.

5

Past relevant work is work that (1) occurred within the past fifteen years (the recency requirement), (2) was of sufficient duration to enable the worker to learn to do the job (the duration requirement), and (3) was substantial gainful employment. 20 C.F.R. § 416.965(a). Ms. Bailey concedes her work as a painter meets the recency requirement. This case thus turns on whether her past work met the duration requirement and constituted substantial gainful activity. I address each of these issues in turn.

A.  Duration

Ms. Bailey argues that her off–and–on work as an oil painter does not meet the duration requirement, meaning she didn't work long enough as an oil painter to learn the skills needed be a successful painter. The vocational expert testified that the painter occupation had a specific vocational preparation (SVP) level of eight. AR 72. The ALJ recognized this SVP level means it is skilled work. AR 45; *see also* U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, App. B, B–1 (1993) [hereinafter "Selected Characteristics"] (describing SVP levels).

The SVP level comes from the Dictionary of Occupational Titles, "which is published by the U.S. Department of Labor and relied on by the Commissioner for vocational information." *Dikeman v. Halter*, 245 F.3d 1182, 1186 n.2 (10th Cir. 2001). "SVP is defined as 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job–worker situation.'" *Id.* (quoting Selected

6

Characteristics, App. B, B–1). Jobs with an SVP of eight take four to ten years to learn. *See* Selected Characteristics, App. B, B–1.

The question here, then, is whether the ALJ properly concluded Ms. Bailey worked long enough as a painter—four to ten years—to learn how to do it. Resolution of this question requires a detailed examination of Ms. Bailey's work history.

By any standard, Ms. Bailey's work as a painter has been sporadic. Beginning in 1995, she started working as a self–employed oil painter. AR 195. In 1998, she began also doing some graphic design. AR 195. As the ALJ recognized, none of the work, save maybe one year in 2009, approached full–time. AR 60. Her total earnings (for all types of work she did, including painting and graphic design) were as follows:

| Year | Earnings |
| --- | --- |
| 1995 | $406 |
| 1996 | $7,461 |
| 1997 | $0 |
| 1998 | $0 |
| 1999 | $0 |
| 2000 | $0 |
| 2001 | $0 |
| 2002 | $635 |
| 2003 | $2,663 |
| 2004 | $0 |

| Year | Earnings |
| --- | --- |
| 2005 | $1,169 |
| 2006 | $1,199 |
| 2007 | $0 |
| 2008 | $9,055 |
| 2009 | $13,531 |
| 2010 | $2,864 |
| 2011 | $2,974 |
| 2012 | $8,123 |

7

AR 169. According to Ms. Bailey, in 2009, she had a busy year and made $13,531. AR 60. She painted, sold work in galleries, did graphic design, and taught workshops for women. *Id.* She explained her income was high that year because she did four commission paintings for a national company for $6,000, something she described as "unusual." AR 60–61. She testified that by 2012, when she made $8,123, she could not do the shows or the classes, but she did sell some old prints that year. AR 62. She did not specify, however, how much money she made from selling the old prints. She also testified she worked as a dog sitter that same year. AR 57–59.

There was not much testimony about what she did in the other years. In fact, she began to testify she had done little work as a painter since sometime in the 2000s, but the ALJ interrupted her before she could specify when. AR 61 ("I haven't done a lot of painting since 2000—"). Ms. Bailey may have worked as a painter during many of those years, but her earnings also could have come exclusively or primarily from graphic design.

The ALJ did not discuss this issue. Rather, after talking about Ms. Bailey's work *in 2009*, the ALJ concluded she had worked as a painter long enough to learn how to do it. AR 45. This conclusion is not supported by the evidence in the record, which is too vague to support a rational conclusion about the extent of Ms. Bailey's work as a painter over the years. To be sure, it was fair to assume that Ms. Bailey's earnings in 1995 ($406) and 1996 ($7,461) were from her work as an artist because she did not indicate she did any other type of work during those years in her work

8

history questionnaire. AR 195. It was also fair to assume that she did significant work as a painter in 2009 based on her testimony at the hearing. AR 60–61. However there is little evidence in the record—save Ms. Bailey's truncated statement that she did little work as an artist beginning sometime in the 2000s—about whether her income in the remaining years was from her work as a painter, or even whether she worked as a painter at all during many of those years. *See generally* AR 51–75.

Moreover, what evidence there is suggests at least some of her work was from other sources. In her work history questionnaire, Ms. Bailey explained that in 2011 and 2012, she worked at an Garden Show where she "set up a 10x10 booth" and displayed "paintings, scarves, note cards, greeting cards, and various artist items for sale." AR 208. While some of these sales may be related to or part of the painter job (for example, selling paintings) others clearly are not (for example, selling scarves). *See* Dictionary of Occupational Titles, Painter, No. 144.061–010, 1991 WL 647140 (describing painter occupation). And as Ms. Bailey points out, the record is unclear as to whether she sold her own art or acted as a salesperson for other people. Additionally, she testified she also worked as a dog sitter in 2012. AR 57–59.

Putting all this together leads me to this conclusion: there is evidence she worked as a painter for *parts* of a few years. Does working sporadically over a few years (including 1995, where she made roughly $400 dollars) suffice to support the ALJ's conclusion she had worked at least four years and therefore long enough to

9

learn how to be an oil painter? Social Security Ruling ("SSR") 82–62 points to no. SSR 82–62 explains someone who worked only "sporadically" or "for a brief periods of time" may not meet the duration requirement. *See* Titles II & XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in Gen., SSR 82–62 (S.S.A. 1982), 1982 WL 31386, at *1 [hereinafter "SSR 82–62"]; *see also Josefowicz v. Heckler*, 811 F.2d 1352, 1355–56 (10th Cir. 1987). Moreover, four years is the low end of the time needed to learn how to be a painter. *See* Selected Characteristics, App. B, B–1.

While claimants have the burden at step four to show they are unable to return to their past relevant work, the ALJ must make specific factual findings to support his conclusions, including one that a claimant has past relevant work. *See Campbell*, 822 F.2d at 1521 (explaining that an ALJ's decision must be supported by "such evidence that a reasonable mind might accept to support the conclusion"); *see also* SRR 82–62, 1982 WL 31386, at *3 ("The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far–reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit."). There simply is not enough evidence in the record to support the ALJ's determination that Ms. Bailey's work as an oil painter met the duration requirement.

While I accordingly conclude that remand is necessary, I disagree with Ms.

10

Bailey that remand for an outright award of benefits is appropriate. Instead, I remand with instructions for the ALJ to take additional evidence on Ms. Bailey's past work as a painter. The ALJ may then determine whether, in light of the additional evidence, Ms. Bailey's intermittent work satisfies the duration requirement. It may be that Ms. Bailey worked a lot as a painter during years she also worked as a graphic designer; this would suggest her work may meet the duration requirement. By contrast, if she did little work as a painter during those years, the work may not meet the duration requirement. Either way, the ALJ must gather and evaluate this evidence in the first instance. In addition, the Commissioner disputes which "grid rule" applies in this case if Ms. Bailey does not have past relevant work as an artist. (Response Br. at 13, ECF No. 14.) I leave it to the ALJ to resolve this dispute in the first place, assuming he reaches it.

B.    Substantial Gainful Activity

Ms. Bailey also argues that her employment as an artist does not meet the substantial gainful activity element and thus does not qualify as past relevant work on this ground as well. While she acknowledges that her total 2009 earnings were above the presumptive threshold for substantial gainful activity under the regulations, she argues the ALJ wrongly assumed that all of those earnings were from her work as a painter.

To qualify as substantial gainful activity, work must meet a minimum wage threshold during the relevant past (i.e., during the prior 15 years). *See* 20 C.F.R. § 404.1560(b)(1); SSR 82–62, 1982 WL 31386, at *2. The work need not have been

11

performed at substantial gainful activity levels throughout the entire relevant past, *see Josefowicz*, 811 F.2d at 1356–58, and it can be part–time, 20 C.F.R. § 404.1572(a). In 2009, the minimum wage threshold was an average of $980/month. *See* 20 C.F.R. §§ 404.1574(b)(2), 404.1575(c)(2).

Ms. Bailey made $13,531 in 2009, an average of $1,128 per month. AR 169. This amount is above the threshold for substantial gainful activity. *See* 20 C.F.R. §§ 404.1574(b)(2), 404.1575(c)(2). However, Ms. Bailey points out that she did other work in 2009, including graphic design. She also argues that the ALJ should not have considered her work at galleries when determining how much income came from her work as a painter. She characterizes the gallery work as selling *other* artists' work, not her own. The record is admittedly ambiguous on this point, and Ms. Bailey's testimony at the hearing provides little clarification.

However, I need not determine now whether the ALJ's interpretation of the evidence on this point was supported by substantial evidence given my determination that remand is necessary for the ALJ to reassess whether Ms. Bailey's work met the duration requirement. The additional evidence taken on remand may well include additional evidence about Ms. Bailey's activities in 2009. I accordingly decline to reach this issue now given that the ALJ's decision on this issue could change (or find additional support) through the remand proceedings.

## V. Conclusion

For the reasons described above, I **REVERSE** the Commissioner's final order and **REMAND** for proceedings consistent with this opinion.

**Dated**: April __21^ST__, 2017 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE